Canberra v. Chevron May it please the Court. Good morning, Your Honors. My name is Cabral Bonner and I represent Frank Canberra in this case. And I want to focus the Court's attention first on the issue of Wooley Bradford's age. I think this is an issue where the trial court abuses its discretion. Sure. What? It's an issue where the trial court abuses its discretion in not allowing or not considering Canberra's evidence as to Wooley Bradford's age. As to what his age? Wooley Bradford's age. His age. Oh, I couldn't see where it mattered. Let me tell you my problem with the case. It looks to me like there's difficulty with the Prima Facie case. And the reason is that the average age, a whole bunch of employees have been chosen over him in various multiple situations where he was up for a promotion or something of that nature. And the average age of the employees chosen over him was that they were older than him. Your Honor, what we intend to focus on is the job where Mr. Canberra was compared side by side with Wooley Bradford, a man ten years his younger. But there's no, I mean, the only thing we have for his age was, as the Court found, was this handwritten notation and there wasn't evidence that that was properly a business record. There was no information about the source of it or that they were normally doing it. How do you get around that? There are several ways we get around that. First of all, that was a document that was produced by the defendants. They provided it along with all the other documents related to the PDC. The PDC is their decision-making process around how they assign How do we know what it means? I mean, I have no idea how old either of my colleagues are. And I suppose I could go back to my office upstairs and we could take a guess and I could write in the margin what my guess is of Judge Acuda's or Judge Noonan's age. I don't understand where there's foundation to show that this marginal notation was any more than that. Well, first and foremost, the Chevron has not supplied any information to suggest that it's incorrect. Was there an interrogatory requesting Bradford's age? I am not sure specifically if there was an interrogatory, but I know there obviously there's a continuing duty. This is under Rule 26. This is a hot issue in this case. And the reason this evidence is believable and is reliable is, first and foremost, it was produced by the defendant. And the cases cited by the defendant on why this should not be included, why this is hearsay, they didn't involve evidence that the defendant themselves provided. If you review the bait stamps on this document, it falls in line with the other documents produced that were part of the PDC along with other evidence of The PDC. The PDC is the decision-making group that decides whether Canberra is going to be placed in a position. And they're the ones who determined, and if you determined that Canberra was not going to get a position, then they're the ones, the decision-making body, who opted to hire Willie Bradford over Canberra on a specific job. And if you review what's bait stamped as 953 and 954 Let me approach this a different way. Let's say you have the Prima Facie case. Yes. Let's talk about pretext for a minute. Absolutely. I can see two things that cut against Canberra on pretext. One would be a whole lot of people got promoted over Canberra, and most of them were older than him. And another thing would be in England, where they're scared even of kitchen knives now, as far as I can tell, he scared his fellow employees by talking about guns and shooting and leaving bullets on a co-worker's desk. Now, there are places where that wouldn't be very scary. But in England, they're really, they were scared, evidently. I think that's an excellent point. And what it illustrates is the fact that one of the errors the trial court made is looking beyond what the PDC, the PDC is the decision-making body. Under McDonnell, Douglas, and Burdine, the defendants have to show admissible evidence of why the nondiscriminatory legitimate reason why the defendant was not selected. So what we have to do in this situation is put blinders on to only what the PDC, the PDC is the decision-makers. They're the deciders. And we can only look at what admissible evidence is prepared for why the PDC made their decision. That's the decision that is at issue here. The PDC, there's no evidence in the record that the PDC had any information about the threats of guns. In fact, Fiona Young, the representative provided by Chevron as the person most knowledgeable, said explicitly that that was not discussed. Therefore, the decision-makers, the PDC, they're the only people making the decision at issue here. They didn't have that. They didn't have that information. Moreover, the only legitimate business reason proffered by the defendant, by Fiona Young, the person who knows what happened in the PDC, is that Canberra wasn't a good fit. And under Burdine, not being a good fit does not meet the defendant's burden of production, a low burden that it is. The Chevron way, isn't that a whole complex of notions? And they say he didn't, he didn't meet the Chevron way. What we have in terms of what they said is what was reported by Fiona Young. And the first issue is that Fiona Young says in her declaration, I'm not a decision-maker. But does it matter if she was there and heard what they said? I couldn't quite follow that argument. It wasn't as if she heard about it afterwards. She was there. There's no requirement that she be a decision-maker. Assuming that's true, all she says as to what the decision-maker's decision was based on was that Canberra wasn't a good fit. And there was no discussion of age, I think, is what we're... There was no, yes. ...looking from that. But there was also no discussion of guns. Berhard Gale, if you look at the trial court's decision on page 10, they cite to the declarations of Berhard Gale and Dave Connell as to supporting Canberra's business, the Chevron's rather, Chevron's legitimate non-discriminatory rationale. Unfortunately, those men were not involved in the PDC decision-making. And there's evidence provided by Fiona Young that they were not there, they were not present. In their own declarations, they say they didn't talk to anyone in the PDC. So we have the trial judge took information that wasn't before the PDC to legitimize the PDC's decision. What's the best evidence of pretext? The best evidence of pretext, I'm happy you asked that. If you look at, in the record, on 953 to 954, this particular job, the job GG0314, is a job where the minimum requirements was that the person be a manager grade level 22. They gave the job to a person 11 years Canberra's junior who was a manager grade level 21. A manager grade level 21. Well, I'd like to correct that point. We don't have that evidence. That he was a manager grade level 21 or that he was 11 years younger. Okay. The age. The age. Well, I will point out that in the record, that the issue of the age is admissible first and foremost as a business. But let's assume for the moment that we don't think the pencil notation has been established as evidence of his age. So taking that out, is the only evidence then that you're pointing to as being pretext that they were discriminating against Mr. Canberra on the basis of age, that they gave the job to someone who had different qualifications or didn't have the number. Was per se unqualified. Did not meet the minimum requirements for the job. And there is other evidence on the record. That was on the basis of age if the pencil notation isn't part of evidence. What we know is that the record also provides both men's resumes and that Willie Bradford graduated from college in 1990 and Cameron graduated from college in 1980. That also is competent evidence on the record of the age discrimination. Of the differences, the tenure difference in their age. But in terms of the pencil notation, this is a notation that creates civil liability. It's also an exception under a statement against interest. And even moreover, it is a, it is a, it falls under the category of 807. It's why 807 exists. Chevron controls this document. They control the information. They provided this document to us. Counsel, am I right that at this personnel development committee meeting, Canberra was considered for six positions he'd applied for and three more that he hadn't. So there were nine positions total. And they decided he wasn't a good fit and picked others. But most of the others that they picked for these positions were older than him. If I'm right about that, it seems to me that the inference is that while saying he's not a good fit might be a cover for discrimination, if there was just one position and they picked somebody younger, it does not support that inference if they pick nine people, most of whom are older. But I don't know if I've got my facts right. That is partially true. Some of the people were older. Some of the positions went unopened. But the issue is on this particular job, they picked someone who was per se unqualified. They went beyond. We don't know. Why would we just look at the one job and pretend not to be aware of the others? Because we don't know the criteria that were established. It's also possible that other jobs, whatever the specifics about those jobs, that the other people were more qualified than Cameron and that's why they got the job. On this particular job, the minimum requirement was a grade level 22. The person they hired was a grade level 21. And that is under Odeen and under RAD, that is per se, that establishes discrimination based on age when they choose someone who is ten years his younger. And there is evidence, depends on notation. I think the issue depends on notation of foundation is huge. This is a document supplied by Chevron. It creates liability. It is a reliable document. We understand that. Yes. Counsel, your time has expired. Thank you, Your Honor. We got the argument about the foundation for the document. Since your time has expired, but we may be interested in a little rebuttal, plan 30 seconds. Yes, sir. Good morning, Your Honors. Michelle Ballard Miller on behalf of Chevron. Counsel, could you help me? Did the Personnel Development Committee know anything about the guns and bullets? Can I answer that? In Alaska, people talk about their gun collection and show off their guns all the time. Actually, you're the first person that I've met that I've actually said that there is a huge difference in guns in England versus America, which was news to me when I actually looked at this. It's just friendly conversation in Alaska, but I gather they don't feel the same way in England. Apparently not. Did the Personnel Development Committee know anything about it? What they knew about, which is clear in the record, is there's – can I back up? Can I hold that for just a second? I'll forget why I wanted to know. I will write it down. You can do whatever you want, but if you don't want to answer my question. I will. Did they know about it? And that was interpersonal skills. There are two parts of being an overseas manager where Chevron is working in host countries lots of times under very difficult situations. You need to be the ambassador for the United States. You need to have those soft skills. I'm inferring from the evasion that they did not know about the guns or bullets. I don't – there's no evidence of that. So what was the – what were his defects as an ambassador? Well, there's two aspects. Okay? There's the technical skills. Mr. Cambra is a very technically competent structural engineer, civil engineer. What he lacked was the ability to interact with others, both within the company, within the workplace, and also outside with some of the contractors that the company was working with as well as the governments. How was the information about the deficits and his personal skills made known to the PDC? Were there report cards? Was it a 360-degree report? What was before the PDC when they were making their decision? Let me – there's four different – for each job, there is a composite. If you take a look at excerpt of the record, 930, 968, 988, and 1099, for example. What those charts do for the PDC – and these are people that have moved around the company and have worked with each other for years, the members of the PDC. And what those charts do is they lay out what are the technical competencies that are required and what are the soft skills competencies that are required. Technically, Mr. Cambra scores very well. In his soft skills, if you look at those documents, for example, on 930, document ER930, under the section that says strong interpersonal skills, he is rated a somewhat proficient as opposed to proficient or very proficient. It's hard for me to read the codes. Could you – let's see. SP means somewhat. Somewhat proficient. P is proficient. VP is very proficient. So SP is like a C and a P is like a B. That could be one way. It's the lowest of – right. A. Right. O is either not demonstrated or unknown, but generally not demonstrated. If you look at employer record 968, there's a specific reference at the very bottom written by the members of the PDC while they are doing the deciding as to who gets the position, is that Cambra lacks interpersonal skills to be a consultant. On E9988, on teamwork and collaboration, he is given an O, not demonstrated. Ditto on 1019, he's given an O, not demonstrated. There were within – So an O is like an F? It doesn't stand for a word? It's not good. O means not demonstrated? Not demonstrated. It doesn't mean some word that starts with O? It doesn't mean outstanding, no. It means it's not demonstrated. And is there foundation to show what these codes mean? Yes. I believe in Fiona Young's deposition, but I would have to get you the exact site. I don't know if there's any better foundation for the codes than there is for the age. Oh, yes, there is, and I will give you the site. Can you give me a minute to look in Fiona's deposition? I have to get you a site for that, but it is in the record. It's in the record a number of different times, and I will get you the site. I apologize. And why is he better than Bradford on page 930? Or Bradford is better than him, rather, on page 930? Based on his interpersonal, his soft skills. Thank you. I've just been handed the right page. If you look at ER 964, there's a section as to what the skills rating are. These are attached to the charts that are filled out by the PDC during the ranking meetings. So if you look at the gist of Mr. Camber's argument in this case, is that he, if compared side by side to the other candidates, he was on paper, had more technical experience, but that's only half of the equation. And the problem that the company has had over the years as the lower court reiterated and I think summarized in the decision is that this has been a recurring problem for Mr. Camber, his interpersonal skills, which was something that the PDC did rely on. The PDC, I know you asked before, the PDC is the personnel development committee. It meets twice a year, and individuals are flown in from wherever they are throughout the world, where they look at all of the people that are due for a move within the company on an overseas, in the overseas divisions and some of the business units. I understand this chart right, and I may not, because it's, and you'll educate me if I don't. He outscored Bradford on five of these categories. Bradford outscored him on one. Camber had one zero or O, and Bradford had no zeros or Os. Is that right? I believe so. The top half of the chart is the technical aspects of the job. Unfortunately, part of a very strong component of these positions in overseas are the soft skills and the ability to work as a team with other individuals. And what my opposing counsel's argument is that because in Mr. Camber's opinion, when he compared himself to each individual candidate, he sees himself as more technically competent. But that, unfortunately, that's not sufficient to establish pretext. Are you saying that Mr. Bradford was unqualified for the position, that he didn't meet the qualification standard? He was not unqualified for the position. Why is that? The number that he had was not what was requested in the job description. Those are the desired minimum qualifications. Sometimes people come in at higher rates. Sometimes people come in at lower rates. Sometimes people, or grades, excuse me, are moved around for reasons that are developmental. You want to give somebody an opportunity because they haven't either worked overseas or they haven't worked in this particular area or in this particular job. So in answer to a question that you asked my opposing counsel is that, yes, there were within the context of the PDC the average age of the people that overall that were looked at. I mean, these are all people that are around Mr. Camber's age, if not older. There were six positions that he applied for before the PDC. Four of them were not filled at all. For whatever reason, they go to the PDC and they decide not to fill them. But there's no evidence and they never, that there was continued to look for people to fill those jobs, which would be a part of the prima facie case. One was filled by somebody who was 47, which was older than Mr. Camber. I understand better now than when I came in the room this morning why Camber is focusing and upset about Bradford. It looks like Bradford didn't meet the desired minimum qualification. And Camber, as far as the committee that made the choice knows, because they don't know anything about the guns and bullets, Camber is better than Bradford in every way except for interpersonal skills. Except for the soft skills that were needed for that particular job. There's nothing here that says that the interpersonal skills outweigh all these other measures. I mean, from all I can tell from the chart, they're trying to make personnel decisions objective and scientific. It seems impossible to me, but that's what a lot of big companies do. Well, that's why when Fiona Young sitting in, one of the reasons that she sits in in the PDC, is to make sure that they stay on job-related, why they need a particular person, that whether they're the best fit for the job. The thing about it is he outscores Bradford in every way, and Bradford doesn't meet the minimum desired qualification. So Bradford beats him out just because he's better interpersonal. The PDC. Where does it say that interpersonal skills trump everything else? It's a factor to be considered, and it depends upon the job. And at the PDC, the HR representative who is there, Fiona Young, is there to ensure that any type of, that age is not discussed, that national origin, which was an issue in this case, is not discussed, that religion is not discussed, that anything that is not a fit for that particular job. They look at the skills that the person brings based upon the resume and the needs of the job. That's a shortcut way of looking, of putting them on paper. But there is nothing, there's no evidence whatsoever. In fact, the only evidence, to the extent we even know what Willie Bradford's age really is, that the only evidence that there is is that he was, his interpersonal skills were not viewed as high. He was inconsidered. There were nine particular jobs. Only one, there was Willie Bradford. The other two individuals, one was his age or slightly less, and the other one was older. And four were not filled at all. So... Is it correct that we just have no idea where that marginal notation of Bradford's age came from? That's correct. Was there a discovery request that if answered would have provided Bradford's age? No. In fact, what my counsel incorrectly stated is that Fiona Young was not a person most knowledgeable. There was a motion brought by Mr. Cambra, in this instance, approximately a few days before discovery closed, asking to take a number of more depositions. It went before Magistrate Chen, who fashioned a remedy. Mr. Cambra's attorney at the time, Charles Bonner, not Cabral Brana, was asked, does he want to take Fiona Young as a 30B6 and on... Excuse me, counsel, I couldn't see over my pile here. You're way over time. Sorry. Look at page 792. Thank you. He was asked if he wanted to take her as an individual 30B6. He said individual. Thank you, counsel. I want to address the issue of the zero that was part of Mr. Cambra's rating. And it's a zero in the Chevron way. Attached to Cambra's application was his 360-degree feedback report. Now, while there's lots of discussion about whether that was part of what HR used, it was attached to his application. And in that, it shows that among all managers, Cambra is in the top quartile of all managers in the Chevron way. And to have that document that shows he's in the top quartile of the Chevron way and then have him be rated in something as nebulous and subjective as the Chevron way as a zero, creates a triable issue of fact as to whether or not that zero is simply pretextual to give justification for giving a job to an otherwise capable older gentleman like Mr. Cambra. Thank you, counsel.  Thank you, counsel.
judges: Noonan, Kleinfeld, Ikuta